IN RE APPLICATION OF LOSERIAN )
MINIS, *ET AL.* FOR AN ORDER GRANTING ) Case No. 1:140-mc-91050-DJC
LEAVE TO ISSUE SUBPOENAS FOR THE )
TAKING OF DISCOVERY PURSUANT TO )
28 U.S.C. § 1782 )

## DECLARATION OF RASHID SALIM RASHID

I, RASHID SALIM RASHID, hereby declare under penalty of perjury:

1. I am the founder and Managing Partner of KNR Legal, a Tanzanian law firm that aims to provide effective, professional legal services for clients in Northern Tanzania and Zanzibar. I am a practicing attorney in the United Republic of Tanzania and am counsel for the plaintiffs in *Mondorosi Village Council et al. v. Tanzania Breweries Ltd. et al.*, an action that is currently pending before the High Court of Tanzania in Arusha.

2. As an attorney for rural communities such as those that constitute the Plaintiffs in the *Mondorosi* action, I work closely with the governmental bodies for the Villages, Wards, Divisions, and Districts that form the local government structure of Tanzania, and I have personal experience with the allocation of responsibilities under Tanzania's Local Government (District Authorities) Act, No. 7 of 1982 [hereinafter "LGA"]. Relevant sections of the LGA are attached to this Declaration as Exhibit A. Under Section 26(2) of the LGA, the Village Council – and not the Ward – is the executive authority of the Village and is a corporate entity with the power to sue or be sued. Under Section 57(4) of the LGA, the person who has statutory authority to preside over meetings of the Village Council is the Chairman of the Council, and not the Ward Councillor.

3. Under Section 141 of the LGA, the Chairman of the Village Council is elected by and is accountable to the Village Assembly, not to any Ward Councillor. Moreover, under

Section 106 of the LGA, the Village Council regulates its own proceedings and makes its own by-laws. It is not subject to the control or presiding authority of any Ward officer.

4. The Ward Councillor, by contrast, does *not* have any authority over the Village Council and does not preside over the village officers. Instead, Wards are constituted under Section 29(2) of the LGA as a subdivision of the Division, which is itself a sub-division of the District. Under Section 31 of the LGA, the governing authority of the Ward is the Ward Development Committee, whose Chairman is the Ward Secretary. Under Section 32 of the LGA, the Ward Development Committee is entrusted with "ensuring the implementation of the decisions and policies of the district council, and of development schemes, which relate to the ward," but it does not have the authority to control the Village Councils or their officers or to preside over their meetings. Sections 29-34 of the LGA, provides for division of districts into wards and highlights the functions of the Ward Development Committee. As an administrative subdivision between the village and the district, the ward reviews the proposed village council's economic or development projects in its jurisdiction and approves them for passage up the line to the District Development Committee. The role of a ward councillor is therefore limited to scrutinizing the village's development plans and presides over the village councils only in this capacity.

5. As counsel for the *Mondorosi* Plaintiffs, I assisted in the compilation of the lists of Documents to be Produced and Matters on Which Examination is Requested that were included in the Applicants' proposed subpoenas in the above-captioned action, which were submitted to this court on February 26, 2014, as Exhibits E, F, G, and H to the

Declaration of Marissa Vahlsing. I chose the items on these lists for the likelihood that they would produce evidence that is relevant to the disposition of the *Mondorosi* action.

6. Specifically, in the list of Documents to be Produced by Wineland-Thomson Adventures, Inc.:

   a. Items 1, 2, 3, 4, 5, 6, 9, 10, and 15 are relevant to proving the rightful ownership of the land, the persistence of the land rights of the *Mondorosi* Plaintiffs, any wrongdoing associated with the transfer of the land, and the Defendants' knowledge and/or participation therein.

   b. Item 7 is relevant because the *Mondorosi* Plaintiffs believe that some or all of the wrongful actions that led to the unlawful deprivation of their land and the violent abuse of some of their inhabitants were undertaken by Respondents in this action, and they need information on the relationships between Thomson Entities in order to attribute responsibility accordingly.

   c. Items 8 and 15 are relevant to prove Respondents' knowledge of the matters alleged in ¶¶ 12, 14, and 15 of the *Mondorosi* Plaint, attached as Exhibit A to the Declaration of Marissa Vahlsing. They are also relevant to prove the violent abuses alleged in ¶ 19 of the *Mondorosi* Plaint, and to establish the *Mondorosi* Defendants' responsibility for any damages that the *Mondorosi* Plaintiffs or their inhabitants suffered as a result of those abuses.

   d. Item 9 is relevant to prove the unlawful conversion of the land use of Sukenya Farm as alleged in ¶ 20 of the *Mondorosi* Plaint.

   e. Item 11 is relevant because it relates to the only official inquiry into the status of the land and the abuses that the *Mondorosi* Plaintiffs allege in ¶ 19 of the

*Mondorosi* Plaint, and documents related to the inquiry will help to prove the *Mondorosi* Plaintiffs' knowledge of these abuses.

    f. Items 12 and 16 are relevant to prove the violent prove the violent abuses alleged in ¶ 19 of the *Mondorosi* Plaint.

    g. Items 13, 14, and 17 are relevant to establish the *Mondorosi* Defendants' responsibility for any damages that the *Mondorosi* Plaintiffs or their inhabitants suffered as a result of those abuses.

7. In the list of Matters on Which Examination is Requested from a representative of Wineland-Thomson Adventures, Inc. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure:

    a. Items 1, 2, 3, 4, 6, 9, 14, and 15 are relevant to proving the rightful ownership of the land, the persistence of the land rights of the *Mondorosi* Plaintiffs, any wrongdoing associated with the transfer of the land, and the Defendants' knowledge and/or participation therein.

    b. Items 5 and 15 are relevant to prove Respondents' knowledge of matter alleged in ¶¶ 12, 14, and 15 of the *Mondorosi* Plaint. They are also relevant to prove the violent abuses alleged in ¶ 19 of the *Mondorosi* Plaint, and to establish the *Mondorosi* Defendants' responsibility for any damages that the *Mondorosi* Plaintiffs or their inhabitants suffered as a result of those abuses.

    c. Item 7 is relevant to prove the unlawful conversion of the land use of Sukenya Farm as alleged in ¶ 20 of the *Mondorosi* Plaint.

    d. Item 8 is relevant because the *Mondorosi* Plaintiffs believe that some or all of the wrongful actions that led to the unlawful deprivation of their land and the violent

abuse of some of their inhabitants were undertaken by Respondents in this action, and they need information on the relationships between Thomson Entities in order to attribute responsibility accordingly.

    e. Item 10 is relevant because it relates to the only official inquiry into the status of the land and the abuses that the *Mondorosi* Plaintiffs allege in ¶ 19 of the *Mondorosi* Plaint, and documents related to the inquiry will help to prove the *Mondorosi* Plaintiffs' knowledge of these abuses.

    f. Items 11 and 16 are relevant to prove the violent prove the violent abuses alleged in ¶ 19 of the *Mondorosi* Plaint.

    g. Items 12, 13, and 17 are relevant to establish the *Mondorosi* Defendants' responsibility for any damages that the *Mondorosi* Plaintiffs or their inhabitants suffered as a result of those abuses.

8. The information sought pursuant to the Application in the above-captioned action will likely be admissible in the *Mondorosi* action. However, there is no procedure under Tanzanian law for seeking the affirmative confirmation of a presiding judge that he or she would be receptive to the information because the court will consider it according to the provisions of Tanzania's Evidence Act just as it would any other evidence that a party to pending civil litigation might seek to introduce.

9. Moreover, because the High Court in Arusha will make an independent judgment as to the admissibility of each piece of information or evidence based on generally applicable rules, regardless of whether it was produced pursuant to 28 U.S.C. § 1782, there is little danger of infringement on or disrespect to the sovereignty of the court or the United Republic of Tanzania.

10. Under the Tanzanian legal system, generally, evidence will be considered and admitted based on its relevance and reliability. Evidence may be given in any suit or proceedings of the existence or non-existence of every fact in issue, and of such other facts as are declared relevant. Facts which are the occasion, cause or effect, immediate or otherwise, of relevant facts or facts in issue or which constitute the state of things under which they happened, or which afforded an opportunity for their occurrence or transactions, are relevant. Any fact is relevant which shows or constitutes a motive or preparation for any fact in issue or relevant fact. When the conduct of any person is relevant, any statement made by him or in his presence and hearing which affects such conduct is relevant. In suits in which damages are claimed, any fact which will enable the court to determine the amount of damages which ought to be awarded is relevant. Under the Evidence Act, CAP 6 [Revised Edition 2002] ("The Evidence Act") Section 63, permits documents to be proved either by primary or by secondary evidence. Section 67 permits Secondary evidence to be given of the existence, condition or contents of a document the original of which is in the hands of the opposing party and against whom the document is sought to be proven. Section 140 of the Evidence Act states that no person shall be compelled to produce documents in his possession, which any other person would be entitled to refuse to produce if they were in his possession, unless such other person consents to their production.

11. Under Section 65 and Section 67(1)(a)(i) secondary evidence may be admitted for the purpose of proving or disproving facts. Documents that may be disclosed as a result of this application may be used by The Plaintiffs in the pending civil case in Tanzania and

be used to impeach any witness of any of the defendants during hearing of the civil case pending the the High Court of may Tanzania.

12. Under the the Evidence Act may permit the evidence being sought in this application be admitted against TCL if the originals remain with Thomson. Section 164(1)(c) prior sworn inconsistent statements could be used to impeach Rick Thomson and Judi Wineland, were they to appear as witnesses in the suit. [

13. Contrary to Declaration of Sinare Zaharan, at paragraph 4 (a) and ( b), it is not true that the Courts in Tanzania "has authority" to force non parties to produce documents or to be compelled to appear as a witness and give testimony or to produce any documents. The true position of the law can be found under section 140 of the Evidence Act which does not compel any person to produce any document in his possession .

14. Even if the Courts had authority to summon witnesses who are outside the jurisdiction, it is not practical for Courts to call witness due to the cost involved of bringing some of these witnesses to Tanzania.

15. I declare under penalty of perjury and the laws of the United States of America and pursuant to the laws of the Commonwealth of Massachusetts that the foregoing is true and correct.

Executed this ____ day of April in Arusha, Tanzania

RASHID SALIM RASHID

# **Exhibit A**

# THE LOCAL GOVERNMENT (DISTRICT AUTHORITIES) ACT, 1982

## ARRANGEMENT OF SECTIONS

## PART I

### PRELIMINARY PROVISIONS

*Section*                    *Title*

1. Short title and commencement.
2. Application.
3. Interpretation.
4. Minister to work for meaningful, democratic local government.

## PART II

### LOCAL GOVERNMENT AREAS, ESTABLISHMENT, REGISTRATION AND VARIATION OF AREA OF LOCAL GOVERNMENT AUTHORITIES

#### Establishment of District Councils

5. Power of Minister to establish district councils.
6. Contents of establishment order.
7. Procedure for establishment.
8. Certificate of establishment.
9. Content and effect of certificate.
10. Variation of area of district council.
11. Consequences of variation of area.
12. District council to be body corporate.

#### Establishment of Township Authorities

13. Power of Minister to establish township council.
14. Content of establishing order.
15. Procedure for establishment.
16. Certificate of establishment.
17. Content and effect of certificate.
18. Variation of area of township council.
19. Township council to be body corporate.
20. Attainment of town council status.
21. Consequences of attainment of new status.

#### Establishment of Village Authorities

22. Registration of villages.
23. Appointment of Registrar.
24. The village assembly.
25. The village council.

## THE UNITED REPUBLIC OF TANZANIA



No. 7 OF 1982



I ASSENT,

*President*

28TH JUNE, 1982

..............................................

**An Act to make better provisions for, and to consolidate laws relating to, local government, to repeal the Local Government Ordinance, to repeal certain other written laws and to provide for other matters connected with or incidental to the organization of local government in Mainland Tanzania**

[................................................]

ENACTED by the Parliament of the United Republic of Tanzania.

### PART I

#### PRELIMINARY PROVISIONS

1.—(1) This Act may be cited as the Local Government (District Authorities) Act, 1982.

*Short title and commencement*

(2) This Act shall come into operation on such date as the Minister may, by notice published in the *Gazette*, appoint, subject to subsection (3)

(3) The Minister may appoint different dates for the coming into operation of any of the Parts of this Act, or for its coming into operation in relation to any area or areas in Mainland Tanzania, and for that purpose, the Minister may make more than one notice in pursuance of subsection (2).

## Establishment of Village Authorities

Registration of villages

**22.**—(1) In any case where the Registrar is satisfied that a prescribed number of households have settled and made their homes within any area of Mainland Tanzania, and that the boundaries of that area can be particularly defined, he may, subject to any directions given in that behalf by the Minister, register that area as a village.

(2) Notwithstanding subsection (1), the Minister may, in any case—

(a) authorize two or more areas to be registered as a single village;

(b) authorize the registration of an area as a village notwithstanding that there are less than the prescribed number of households within the area.

(3) The Registrar shall, from time to time, and at least once in every calendar year, cause a notice to be published in the *Gazette* listing every village registered by him since the publication of the previous notice and specifying the location of that village.

Appointment of Registrar

**23.**—(1) The Minister shall appoint a public officer to be the Registrar of Villages for the purposes of this Part.

(2) The Minister may, on the recommendation of the Registrar, appoint such number of Assistant Registrars of Villages as he may deem neccesary.

(3) The Registrar shall discharge and exercise such functions and powers as are conferred upon him by or under this Act, and any other functions and powers which may be conferred upon him by any other written law.

(4) Subject to this Act and to any directions in that behalf given by the Minister, the Registrar may, by writing under his hand, delegate any of his functions to an Assistant Registrar.

The village assembly

**24.** There shall be a village assembly for every village.

The village council

**25.** There shall be a village council for every village in accordance with the provisions of this Act.

Village council to be body corporate

**26.**—(1) As soon as may be practicable after the election of the first village council following the registration of a village, the Registrar shall furnish to the village council a certificate of incorporation in the prescribed form, and also a copy of that certificate to the appropriate Director.

(2) Upon the issue of a certificate of incorporation in relation to a village, the village council of the village in question shall, w th effect from the date of that certificate, be a body corporate, and shall—

(a) have perpetual succession and an official seal;

(b) in its corporate name be capable of suing or being sued;

(c) subject to this Act, be capable of holding and purchasing, or acquiring in any other way, and disposing of any movable or immovable property.

27.—(1) The Minister shall, by notice published in the *Gazette* specify qualifications prerequisite to the attainment by any area to the status of a township, in accordance with the national policy on urban development. *Attainment by village of township status*

(2) Where any village, or any group of villages together, satify the qualifications prerequisite to the attainment of township authority status, the Minister may, subject to this Act, declare the area of that village, or those villages, as the case may be, to be a township.

28.—(1) Where a village, or the area of a group of villages, is conferred the status of a township, there shall cease to exist in that area a village or villages and there shall be established, in lieu of the village or those villages, a township authority, subject to the provisions of this Act. *Consequences of attainment of new status*

(2) Notwithstanding subsection (1), the Minister may provide for the inclusion of neighbouring villages in the area over which a township authority is established, for the purposes only of provision by the authority of any specified services to those villages.

### Divisions and Wards

29.—(1) Every district to which this Act applies shall be divided into such number and size of divisions as may, subject to this section, be specified. *Districts to be divided into divisions and wards*

(2) A division shall consist of such number and size of wards as the district council may determine, subject to subsection (3).

(3) The Minister may from time to time, by order published in the *Gazette,* provide for general principles to guide and to be complied with by all district councils in determining the number and size of divisions in their respective areas.

30.—(1) The area of a district council shall be divided into wards consisting of such number of villages as may be specified in an appropriate order. *Divisions of district council into wards*

(2) The Minister shall, with the prior approval of the President either by the order made under section 5 providing for the establishment of a district council or by a subsequent order, and may, from time to time thence, by order made under this section, and published in the *Gazette,* divide the area of all or any of the district councils established under this Act into such number of wards as he may specify in the order.

Establish-
ment of
Ward
Comittee

**31.**—(1) There is hereby established a Ward Development Committee for every ward established in the area of every district council.

(2) The Ward Committee shall consist of—

(a) the Ward Secretary, who shall be the Chairman;

(b) the elected member of the district council representing the ward;

(c) public officers seconded to the ward;

(d) the chairmen of all village councils within the ward;

(e) the chief executive officers of all village councils within the ward;

(f) all village managers, if any, within the ward.

(3) The Ward Committee shall appoint one of the chief executive officers of villages within the ward to be the Secretary of the Committee, and he shall hold that office for a term of one year, but may be reappointed.

Functions
of Ward
Develop-
ment
Committee

**32.**—(1) The Ward Development Committee shall be responsible for ensuring the implementation of the decisions and policies of the district council, and of development schemes, which relate to the ward, and, without prejudice to the generality of that duty, shall, in particular, be responsible for—

(a) promoting the establishment and development of co-operative enterprises and activities within the ward;

(b) the initiation or formulation of any task, venture or enterprise designed to ensure the welfare and well being of the residents of the ward;

(c) the supervision and co-ordination of the implementation of projects and programmes of the district council within the ward;

(d) planning and co-ordinating the activities of, and rendering assistance and advice to the residents of the ward engaged in any activity or industry of any kind;

(e) the formulation, and submission to the village councils or to the district council, of proposals for the making of by-laws in relation to the affairs of the ward.

(2) For the purposes of subsection (1), a scheme or programme for the development of the area of the ward includes a scheme or programme—

(a) for agricultural or pastoral development:

(b) for the construction of roads or public highways;

(c) for the construction of works or buildings for the social welfare of the inhabitants of the ward;

(d) for the establishment of any industry;

(e) for the construction of any work of public utility.

33.—(1) Where any scheme or programme for the develop- Procedure
ment of the ward has been approved by the Director or the village for imple-
councils concerned, as the case may be, the ward development of schemes
committee shall, in such manner as is customary to disseminate and pro-
information in the area, inform all persons within the area of the grammes
ward of the details of the scheme or programme and of the date,
time and place upon which and when the persons liable to partici-
pate in its implementation shall report in order to so participate.

(2) The ward development committee may require different
categories of persons to report for participation in the implementa-
tion of a scheme or programme, as the case may be, at different
times.

(3) Subject to the preceding provisions of this section, and to
any general or specific directions of the district council in that
behalf, the ward development committee may, in enforcing the
implementation of any scheme or programme, as the case may be,
adopt such procedure or procedures as will appear to it to be best
suited for or conducive to the speedy and correct realization of the
purposes of the scheme or programme.

34.—(1) Subject to any regulations made in that behalf or any Proceedings
directions given by the district council, every Ward Development of Ward
Committee may regulate its own procedure.                        Develop-
                                                                 ment
(2) The Director of each district council shall be the Secretary Committee
to the council, but shall not vote at any of its meetings.

(3) The validity of any act or decision taken at any meeting of a
Ward Development Committee or any of its subcommittees shall
not be affected by any vacancy in their respective membership or
any defect in the appointment of the persons attending any of their
respective meetings.

## PART III

### COMPOSITION OF LOCAL GOVERNMENT AUTHORITIES

#### *Composition of District Councils*

35.—(1) Every distric council shall consist of—    Constitution

(a) members elected one from each ward in the area of the of district
    district council;                                         council

(b) members elected by the district council one each from
    among persons nominated two each by Party Organizations
    in the area of the district council;

(c) three members appointed by the Minister;

(d) the Member or Members of Parliament representing con-
    stituencies within the area of the district council in the
    Assembly;

(e) if he is resident in the area of the council, the national Member of Parliament elected from the region in which the council is situated; and

(f) other members elected by the district council one from among the chairmen of village councils within the area of the district council.

(2) The Director of the each district council shall be the Secretary to the council.

(3) Members of the district council elected under paragraph (f) shall be elected after every three years by rotation and shall not exceed one-third of all elected members of the district council.

(4) Members required to be elected by the district council shall be elected by secret ballot at elections in which no person shall participate except members referred to in subsection (1) (a), (d), and (e), and they shall be deemed to be appointed members for the purpose of this Act.

Chairmanship of district councils

**36.**—(1) There shall be a Chairman and Vice-Chairman for each district council.

(2) The Chairman and the Vice-Chairman of the district council shall each be elected by members from amongst the elected members of the Coucil.

(3) The chairman, when elected, shall, unless he sooner resigns or otherwise ceases to be a member, hold office for a term of three years and at the expiration of that term shall be eligible for re-election, subject to the provisions of section 44. The Vice-Chairman shall hold that office for one year, but may be re-elected.

Election of elected members

**37.**—(1) All elected members of the district council shall be elected at elections conducted for the purpose in accordance with the provisions of the law for the time being in force in relation to the election of members of local government authorities.

(2) Ordinary elections of elected members shall be held prior to the date of retirement of incumbent members; and elected members shall not assume their offices until after the incumbent members have retired.

Qualifications for election

**38.**—(1) Subject to the following provisions of this section, any citizen of the United Republic who has attained the age of twenty one years, and who is ordinarily resident within the area of jurisdiction of a district council, and who is not an officer or employee of that council, shall be qualified for election as an elected member of that district council.

(2) A person shall be disqualified for election as an elected member of a district council if—

## Composition of Village Government Organs

Composition of village assembly

**55.** Every village assembly shall consist of every person who is ordinarily resident in the village and who has attained the apparent age of eighteen years.

Composition of village council

**56.—**(1) Each village council shall consist of such number of members elected according to such procedures as shall be prescribed by the Minister.

(2) The Chairman of the branch of the Party within the village, where a branch exists, shall be the chairman of the village council, and the Secretary of that branch shall also be the Village Secretary.

Election of village council

**57.—**(1) As soon as may be practicable after the registration of a village, the village assembly of the village shall meet for the purpose of electing a village council for the village.

(2) The meeting convened under subsection (1) shall be presided over by a chairman elected by the village assembly from among its members for the purposes of holding elections.

(3) As soon as may be practicable after the expiry of three years from the date when the village council was elected by the village assembly, the chairman of the village council shall convene a meeting of the village assembly for election of new members of the council.

(4) At a meeting convened pursuant to the provisions of subsection (3), the Chairman of the Council, or in his absence or inability to act, a temporary chairman elected by the village assembly, shall preside.

(5) It shall be lawful for the village assembly, at a meeting convened pursuant to subsection (3), to enlarge or reduce, subject to regulations in that behalf made under this Act, the membership of the village council to be elected.

Qualifications for election

**58.** No person shall be qualified for election as a member of the village council of a village unless—

(a) he has attained the apparent age of twenty-one years;

(b) he is a member of a household within the village and is ordinarily resident in the village.

Tenure of office of members

**59. 55.** Every member of the village council shall, unless he sooner ceases to be a member by death or resignation, continue to hold office as a member of that council until such time as the village assembly next meets for the election of the members of the council in accordance with the provisions of subsection (3) of section 57.

(3) The validity of any act or decision taken at any meeting of a committee of a township autority shall not be affected by any vacancy in its membership or any defect in the appointment of any of the persons attending the meeting.

Reports of committees

**100.** Every committee appointed under this Part shall report its findings to the township authority.

Public and press

**101.** The proceedings of a committee shall not be open to members of the public or the press except in pursuance of a resolution to that effect of the township authority appointing it.

Rules

**102.** Subject to this Act, the Minister may, after consultation with the district council within whose area of jurisdiction a township authority is situate, make rules, to be published in the *Gazette*, regulating the procedure for the conduct of the business of committees under this Part.

## *Meetings of Village Government Organs*

Meetings of village assembly

**103.**—(1) There shall be convened a meeting of the village assembly whenever it is necessary to hold elections to constitute a village council or to elect any member of it.

(2) There shall be held an ordinary meeting of the village assembly at least once in every three months.

(3) The village council may, if it considers it necessary or desirable for any reason so to do, convene an extraordinary meeting of the village assembly to discuss and decide upon any matter of extraordinary public importance.

Meetings of village council

**104.** The village council shall meet at such times and places as it may determine, and at such intervals as is necessary or expedient for, or conducive to the effective and efficient management of the affairs and business of the council and the maintenance of good order and government in the village.

Quorum at meetings of village councils

**105.** The quorum at any meeting of a village council shall be not less than half of all the members of the council.

Village council may regulate its own proceedings

**106.** Subject to this Part, a village council shall regulate its own proceedings and may, for that purpose make by-laws governing its procedure.

Committees of village council

**107.** A village council may establish such permanent committees, and apoint such special committees, as it may deem necessary or expedient for the efficient and effective discharge of its functions.

Inquiries into performance of functions duties

**140.** The Minister shall have in respect of inquiries into the performance of functions and other matters in relation to township authorities the same duty and the same powers as he has in relation to district councils under section 130.

## Functions of Village Government Organs

Functions of village asembly

**141.** A village assembly is the supreme authority on all matters of general policy-making in relation to the affairs of the village as such, and shall be responsible for the election of the village council and the removal from the council of any or all of the members of the council, and for the performance of any other functions conferred upon it by or under this Act or any other written law.

Functions of village council

**142.**—(1) A village council is the organ in which is vested all executive power in respect of all the affairs and business of a village.

(2) In addition to any functions conferred upon it by or under this Act or any other written law, a village council shall—

(a) do all such acts and things as are necessary or expedient for the economic and social development of the village;

(b) initiate and undertake any task, venture or enterprise designed to ensure the welfare and well being of the residents of the village;

(c) plan and co-ordinate the activities of and render assistance and advice to the residents of the village engaged in agricultural, horticultural, forestry or other activity or industry of any kind;

(d) encourage the residents of the village in undertaking and participating in communal enterprises;

(e) to participate, by way of partnership or any other way, in economic enterprises with other village councils.

(3) For the purposes of this Part, a village council shall have the power to do all such acts and things as appear to it to be necessary, adventageous or convenient for or in connection with the carrying out of its functions or to be incidental or conducive to their proper discharge.

Village to undertake co-operative venture

**143.** Subject to the provisions of the Co-operative Societies Act, 1982, a village council shall as far as is possible and adventageous, and taking into account the resources available to it, facilitate the undertaking by the residents of the village, ventures which are of a co-operative nature or encourage or promote the development and enhancement of the spirit of ujamaa in economic and other public enterprises.

# **<u>Exhibit B</u>**

—————

CHAPTER 6

—————

THE EVIDENCE ACT
[PRINCIPAL LEGISLATION]

ARRANGEMENT OF SECTIONS

*Section*        *Title*

CHAPTER I
PRELIMINARY PROVISIONS

1. Short title.
2. Application.
3. Interpretation.
4. Permissible inferences.
5. Presumptions.
6. Conclusive proof.

CHAPTER II
THE RELEVANCY OF FACTS

PART I
GENERAL

7. Evidence may be given of facts in issue and relevant facts.
8. Relevancy of facts forming part of same transaction.
9. Facts which are the occasion, cause or effect of facts in issue.
10. Motive, preparation and previous or subsequent conduct.
11. Facts necessary to explain or introduce relevant facts.
12. Things said or done by conspirator in reference to common design.
13. When facts not otherwise relevant become relevant.
14. In suits for damages, facts tending to enable court to determine amount of damages are relevant.
15. Facts affecting existence of right or custom.
16. Facts showing existence of state of mind or of body, or of bodily feeling.
17. Facts bearing on question whether act was accidental or intentional.
18. Existence of course of business when relevant.

PART II
ADMISSIONS

19. Admission defined.
20. Statements by party to suit or agent or interested party.
21. Admissions by persons whose position must be proved as against party to suit.
22. Admissions by persons expressly referred to by party to suit.

CHAPTER 6

THE EVIDENCE ACT

An Act to declare the law of evidence.

[1st July, 1967]
[G.N. No. 225 of 1967]

Acts Nos.
6 of 1967
5 of 1971
9 of 1980
4 of 1998
21 of 2002
15 of 2007

CHAPTER I
PRELIMINARY PROVISIONS

Short title

**1.** This Act may be cited as the Evidence Act.

Application

**2.** Except as otherwise provided in any other law this Act shall apply to judicial proceedings in all courts, other than primary courts, in which evidence is or may be given but shall not apply to affidavits presented to any court or officer not to arbitration proceedings.

Interpretation Act
No. 19 of 1980 s.
3

**3.-**(1) In this Act, unless context requires otherwise–

"confession" means–

    (a)    words or conduct, or a combination of both words and conduct, from which, whether taken alone or in conjunction with other facts proved, an inference may reasonably be drawn that the person who said the words or did the act or acts constituting the conduct has committed an offence; or

    (b)    a statement which admits in terms either an offence or substantially that the person making the statement has committed an offence; or

    (c)    a statement containing an admission of all the ingredients of the offence with which its maker is charged; or

    (d)    a statement containing affirmative declarations in which incriminating facts are admitted from which, when taken alone or in conjunction with the other facts proved, an inference may reasonably be drawn that the person making the statement has committed an offence;

"court" includes all judges, magistrates and assessors and all persons,

before the hearing, they agree to admit by any writing under their hands, or which by any rule of pleading in force at the time they are deemed to have admitted by their pleadings:

Provided that the court may, in its discretion, require the facts admitted to be proved otherwise than by such admissions.

## PART II
## ORAL EVIDENCE

Oral evidence

**61.** All facts, except the contents of documents, may be proved by oral evidence.

Oral evidence must be direct

**62.**-(1) Oral evidence must, in all cases whatever, be direct; that is to say–

(a) if it refers to a fact which could be seen, it must be the evidence of a witness who says he saw it;

(b) if it refers to a fact which could be heard, it must be the evidence of a witness who says he heard it;

(c) if it refers to a fact which could be perceived by any other sense, or in any other manner, it must be the evidence of a witness who says he perceived it by that sense or in that manner;

(d) if it refers to an opinion or to the grounds on which that opinion is held, it must be the evidence of the person who holds that opinion or, as the case may be, who holds it on those grounds:

Provided that the opinions of experts expressed in any treatise commonly offered for sale, and the grounds on which such opinions are held, may be proved by the production of such treatise if the author is dead or cannot be found, or has become incapable of giving evidence, or cannot be called as a witness without an amount of delay or expense which the court regards as unreasonable.

(2) If oral evidence refers to the existence or condition of any material thing other than a document, the court may, if it thinks fit, require the production of such material thing for its inspection.

## PART III
## DOCUMENTARY EVIDENCE

Proof of contents of documents

**63.** The contents of documents may be proved either by primary or by secondary evidence.

Primary evidence

**64.**-(1)  Primary evidence means the document itself produced for the inspection of the Court.

(2) Where a document is executed in several parts, each part is

primary evidence of the document.

(3) Where a document is executed in counterpart, each counterpart being executed by one or some of the parties only, each counterpart is primary evidence as against the parties executing it.

(4) Where a number of documents are all made by one uniform process, as in the case of printing, lithography or photography, each is primary evidence of the contents, of the rest; but where they are all copies of a common original, they are not primary evidence of the contents of the original.

Secondary evidence

**65.** Secondary evidence includes–

(a) certified copies in accordance with the provisions of this Act;
(b) copies made from the original by mechanical process which in themselves ensure the accuracy of the copy and copies compared with such copies;
(c) copies made from or compared with the original;
(d) counterparts of documents as against the parties who did not execute them;
(e) oral accounts of the contents of a document given by some person who has himself seen it.

Proof of documents by primary evidence

**66.** Documents must be proved by primary evidence except as otherwise provided in this Act.

Proof of documents by secondary evidence

**67.**-(1) Secondary evidence may be given of the existence, condition or contents of a document in the following evidence cases–

(a) when the original is shown or appears to be in the possession or power of–
    (i) the person against whom the document is sought to be proved;
    (ii) a person out of reach of, or not subject to, the process of the court; or
    (iii) a person legally bound to produce it, and when, after the notice specified in section 68, such person does not produce it;
(b) when the existence, condition or contents of the original have been proved to be admitted in writing by the person against whom it is proved or by his representative in interest;
(c) when the original has been destroyed or lost, or when the party offering evidence of its contents cannot, for any other reason not arising from his own default or neglect, produce it in reasonable time;
(d) when the original is of such a nature as not to be easily movable;

(e) when the original is a public document within the meaning of section 83;

(f) when the original is a document of which a certified copy is permitted by this Act or by any written law to be given in evidence;

(g) when the originals consist of numerous accounts or other documents which cannot conveniently be examined in court, and the fact to be proved is the general result of the whole collection.

(2)    In the cases mentioned in paragraphs (a), (c) and (d) of subsection (1) any secondary evidence of the contents of the document is admissible.

(3)  In the case mentioned in paragraph (b) of subsection (1) the written admission is admissible.

(4)    In the cases mentioned in paragraphs (e) and (f) of subsection (l), a certified copy of the document, but no other kind of secondary evidence, is admissible.

(5) In the case mentioned in paragraph (g) of subsection (1) evidence may be given as to the general result of the accounts or documents by any person who has examined them and who is skilled in the examination of such accounts or documents.

Rules as to notice to produce

**68**.    Secondary evidence of the contents of the documents referred to in paragraph (a) of subsection (1) of section 67 shall not be given unless the party proposing to give such secondary evidence has previously given to the party in whose possession or power the document is, or to his advocate, such notice to produce it as is prescribed by law; and if no notice is prescribed by law, then such notice as a court considers reasonable in the circumstance of the case:

Provided that the notice shall not be required in order to render secondary evidence admissible in any of the following cases–

(a) when the document to be proved is itself a notice;

(b) when, from the nature of the case, the adverse party must know that he will be required to produce it;

(c) when it appears or is proved that the adverse party has obtained possession of the original by fraud or force;

(d) when the adverse party or his agent has the original in court;

(e) when the adverse party or his agent has admitted the loss of the document;

(f) when the person in possession of the document is out of reach of, or not subject to, the process of the court;

(g) in any other case in which the court thinks fit to dispense with the requirement.

| | |
|---|---|
| Production of incriminating documents | **139**. No witness who is not a party to a suit shall be compelled to produce a document, the production of which might tend to incriminate him, unless he has agreed in writing with the person seeking the production of that document or another person through whom he claims to produce it. |
| Production of documents which another person having possession could refuse to produce | **140**. No person shall be compelled to produce documents in his possession, which any other person would be entitled to refuse to produce if they were in his possession, unless such other person consents to their production. |
| Witness not excused from answering on ground that answer will incriminate | **141**. A witness shall not be excused from answering any question as to any matter relevant to the matter in issue in any suit or in any civil or criminal proceedings, upon the ground that the answer to that question will incriminate, or may tend directly or indirectly to incriminate the witness, or that it will expose, or tend directly or indirectly to expose him to a penalty or forfeiture of any kind, or that it may establish or tend to establish that he owes a debt or is otherwise subject to a civil suit: Provided that no such answer, which a witness shall be compelled to give, shall subject him to any arrest or prosecution, or be proved against him in any subsequent criminal proceedings, except to a prosecution for giving false evidence by such answer. |
| Evidence in offences of receiving Act No. 19 of 1980 s. 16 | **141A**.-(1) Where any person is charged with the offence of receiving any property while he knew it to have been stolen or for having in his possession any stolen property or property fraudulently or in any other way unlawfully obtained, for the purpose of proving guilty knowledge, there may be given at any stage of the proceedings– |

> (a) evidence of the fact that the property stolen or fraudulently or in any other way unlawfully obtained was found or had been in his possession within the period of twelve months immediately preceding the date of the commission or discovery of the commission of the offence with which that person is charged;
>
> (b) subject to subsection (2), evidence of the fact that within the period of five years immediately preceding the date of the offence with which he is charged he was convicted of an offence involving fraud or dishonesty.

(2) No evidence of the fact mentioned in paragraph (b) of subsection (1) may be proved unless–

> (a) a written notice of the intention to give evidence of the previous conviction has been given to the accused or to his advocate or other representative at least three days before the day when the evidence is intended to be given; and

between the importance of the imputation made against the witness's character and the importance of his evidence.

(3) The court may, if it sees fit, draw from the witness's refusal to answer the inference that the answer, if given, would be unfavourable.

**Question not to be asked without reasonable grounds**

**159.** No such question as is referred to in section 158 shall be asked, unless the person asking it has reasonable grounds for thinking that the imputation which it conveys is well founded.

**Indecent and scandalous questions**

**160.** The court may forbid any questions or inquiries which it regards as indecent or scandalous, although such question or inquiries may have some bearing on the questions before the court, unless they relate to facts in issue, or to matters necessary to be known in order to determine whether or not the facts in issue exist.

**Questions intended to insult or annoy**

**161.** The court shall forbid any question which appears to it to be intended to insult or annoy or which, though proper in itself, appears to the court needlessly offensive in form.

**Exclusion of evidence to contradict answers to questions testing veracity**

**162.** When a witness has been asked and has answered any question which is relevant to the inquiry only in so far as it tends to shake his credit by injuring his character, no evidence shall be given to contradict him, but if he answers falsely he may afterwards be charged with giving false evidence:

Provided that–

(a) if a witness is asked whether he has been previously convicted of any crime and denies it, evidence may be given of his previous convictions; and

(b) if a witness is asked any question tending to impeach his impartiality and answers it by denying the facts suggested, evidence may be given of the facts.

**Discretion to allow cross-examination of own witness**

**163.** The court may, in its discretion, permit the person who calls a witness to put any question to him which might be put in cross-examination by the adverse party.

**Impeaching the credit of a witness**

**164.**-(1) The credit of a witness may be impeached in the following ways by the adverse party or, with the consent of the court, by the party who calls him–

(a) by the evidence of persons who testify that they, from their knowledge of the witness, believe him to be unworthy of credit;

(b) by proof that the witness has received or received the offer of a corrupt inducement to give his evidence;

(c) by proof of former statements inconsistent with any part of his evidence which is liable to be contradicted;

(d)  when a man is prosecuted for rape or an attempt to commit rape, it may be shown that the complainant was of generally immoral character.

(2)  A person who, called as a witness pursuant to paragraph (a) of subsection (1), declares another witness to be unworthy of credit may not, upon his examination-in-chief, give reasons for his belief but he may be asked his reasons in cross-examination and the answers which he gives cannot be contradicted though, if they are false, he may afterwards be charged with giving false evidence.

Evidence tending to corroborate evidence of relevant fact admissible

**165**. When a witness whom it is intended to corroborate gives evidence of any relevant fact, he may be questioned as to any other circumstances which he observed at or near to the time or place at which such relevant fact occurred, if the court is of opinion that such circumstances, if proved, would corroborate his testimony as to the relevant fact about which he testifies.

Former statements of witness may be proved to corroborate later testimony as to same fact

**166**.  In order to corroborate the testimony of a witness, any former statement, written or oral, made by that witness relating to the same fact made either at or about the same time when the fact took place or before any authority legally competent to investigate the fact, may be proved.

What matters may be proved in connection with proved statement relevant under section 34 or 35

**167**.  Whenever any statement, relevant under section 34 or 35 is proved, all matters may be proved either in order to contradict or to corroborate it, or in order to impeach or confirm the credit of the person by whom it was made, which might have been proved if that person had been called as a witness and had denied upon cross-examination the truth of the matter suggested.

PART IV
REFRESHING MEMORY AND PRODUCTION OF DOCUMENTS

Refreshing memory

**168**.-(1) A witness may, while under examination, refresh his memory by referring to any writing made by himself at the time of the transaction concerning which he is questioned or so soon afterwards that the court considers it likely that the transaction was at that time fresh in his memory.

(2) A witness may, while under examination, refresh his memory by referring to any writing made by any other person and read by the witness within the time referred to in subsection (1), if when he read it he knew it to be correct.

When witness may use copy of document to refresh memory

**169**. Whenever a witness may refresh his memory by reference to any writing he may, if the court is satisfied that there is sufficient reason for the non-production of the original and with the permission of the

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan Kaufman, hereby certify that this document is being filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served upon those indicated as non-registered participants.

DATED: April 8, 2014

<u>*/s/ Jonathan Kaufman*</u>

Jonathan Kaufman